PATRICK J. HOURIGAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   November 21, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.

In an action against a street railway company by a workman, who was employed by the defendant as one of a gang of laborers to work under one P. in unloading a coal schooner at a power station wharf of the defendant, for injuries from falling into the hold of the vessel owing to the giving way and breaking of a ladder about twenty feet long which the plaintiff with one or more of the other men was ascending when they had been ordered to stop work for the day, it appeared that the ladder was put in position and was lashed by P., and there was evidence warranting a finding that the giving way of the ladder was caused by his negligence in selecting an improper piece of rope with which to lash the top of the ladder to a ring bolt in the deck. There also was evidence that P. was paid more than the other men employed in unloading the schooner, that he did manual work only when he felt like it, that it was his duty to report how many men he wanted and to report them if they did not work properly, and it also was his duty to tell the men where to shovel the coal, to whistle and tell the engineer when to hoist and when to lower the coal scoop, and to tell the men when to stop work, and that there was no other person in immediate charge of the work. *Held,* that this evidence warranted a finding that P. was a superintendent within the meaning of the employers' liability act, and that the setting up of the ladder, including the lashing of it, was a part of the work to be done under his superintendence.

TORT for personal injuries received by the plaintiff while in the employ of the defendant on April 26, 1900, at about a quarter before nine o'clock in the evening, from the breaking of a ladder

alleged to have been defective, which the plaintiff was ascending in leaving the hold of a vessel discharging coal at the wharf of the defendant's power house on Albany Street in Boston, with a first count alleging a defect in the ways, works or machinery of the defendant, a second count, at common law, alleging defective appliances, and a third count, added by amendment, alleging negligence of a person in the service of the defendant who was exercising superintendence and whose sole or principal duty was that of superintendence. Writ dated July 12, 1900.

In the Superior Court the case was tried before *Bond,* J. The material evidence is described in the opinion. At the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff was not entitled to recover. The judge so ruled, saying that there was not sufficient evidence to warrant the jury in finding that the defendant was negligent, and that, whatever negligence there was, was the negligence of a fellow servant of the plaintiff, for which the defendant was not liable. The judge ordered a verdict for the defendant ; and the plaintiff alleged exceptions.

*C. C. Johnson,* for the plaintiff.

*E. P. Saltonstall,* (*S. H. E. Freund* with him,) for the defendant.

LORING, J. The plaintiff in this case was one of a gang of laborers employed by the defendant railway company at its central power station wharf. On the day of the accident he was sent by one Connelley, who was " the boss," with eleven to eighteen other men, to work under one Porter in unloading a coal schooner. The plaintiff was set to work with others in the hold of the schooner. At a quarter to nine o'clock in the evening Porter told the men to stop work. Thereupon the plaintiff with one other or three others started up a ladder in the forward hatch. Before he reached the top the ladder broke and the plaintiff fell to the bottom of the hold. The plaintiff's evidence showed that the rope by which the top of the ladder was lashed to a ring bolt in the deck broke and the ladder thereupon fell back, buckled and broke. The defendant introduced evidence showing that the ladder broke from the weight of four men who tried to go up on it at one time, and that the breaking of the rope was caused by the breaking of the ladder.

The ladder was some twenty feet in length, rested on the keelson and reached to the deck. It was put in position and lashed by Porter. At the bottom it was lashed around a stanchion running from the keelson to the deck. This lashing was about four feet above the keelson. The point where the ladder broke was about six or eight inches above this lashing. The ladder was put in position and lashed by Porter on the first day that the work of unloading this schooner began.

We are of opinion that the plaintiff had a right to go to the jury on the third count, in which he declared on the negligence of Porter as a superintendent in making fast the top lashing of the ladder.

There was evidence that Porter was paid more than the other men employed in unloading the schooner in question; that he did manual work only when he felt like it; that it was his duty to report how many men he wanted and to report them if they did not work properly; that it was his duty to tell the men where to shovel the coal and to whistle and tell the engineer when to hoist and when to lower the coal scoop; and that it was also his duty to tell the men when to stop work. There was no other person in immediate charge of the work. This warranted the jury in finding that Porter was a superintendent within the employers' liability act. The case comes within cases like *Knight* v. *Overman Wheel Co.* 174 Mass. 455, *Murphy* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 18, and not within cases like *Shepard* v. *Boston & Maine Railroad,* 158 Mass. 174; *Sullivan* v. *Fitchburg Railroad,* 161 Mass. 125; *Dowd* v. *Boston & Albany Railroad,* 162 Mass. 185; *O'Neil* v. *O'Leary,* 164 Mass. 387.

The jury also were warranted in finding that the setting up of the ladder, including the lashing of it, was a part of the work to be done under Porter's superintendence.

There was abundant evidence that the rope used for the top lashing was not a proper one if the top of the ladder ought to have been lashed firmly. Apart from the testimony given by the plaintiff's witnesses, that part of the case was more than proved by Porter. Porter testified that no top lashing was necessary to hold the ladder and for that reason he used "only a rope yarn," one strand of a three inch rope.

The negligence complained of was not negligence in tying the knot by which the upper lashing was tied, but in selecting an improper piece of rope for the upper lashing.    That is an act of superintendence, and none the less so because the knot was tied by Porter.    *McPhee* v. *New England Structural Co.* 188 Mass. 141, and cases cited.    See also *Cunningham* v. *Atlas Tack Co.* 187 Mass. 51.

*Exceptions sustained.*